IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

LLOYD M. B., IV,

                 Plaintiff,

      v.                                  Civil Action No.
                                        5:22-CV-0580 (MAD/DEP)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

APPEARANCES:                OF COUNSEL:

FOR PLAINTIFF

OLINSKY LAW GROUP          APRIL CARR, ESQ.
250 South Clinton Street, Suite 210   HOWARD D. OLINSKY, ESQ.
Syracuse, NY 13202

FOR DEFENDANT

SOCIAL SECURITY ADMIN.       SHANNON FISHEL, ESQ.
OFFICE OF GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §

405(g), to challenge a determination of the Commissioner of Social

Security ("Commissioner") finding that he was not disabled at the relevant

times and, accordingly, is ineligible for the disability insurance benefits

("DIB") for which he has applied.  The matter has been referred to me for

the issuance of a report and recommendation, pursuant to 28 U.S.C. §

636(b) and Northern District of New York Local Rule 72.3.  For the reasons

set forth below, I recommend a finding that the Commissioner's

determination resulted from the application of proper legal principles and is

supported by substantial evidence.

I.    <u>BACKGROUND</u>

Plaintiff was born in January of 1973, and is currently fifty years of

age.  He was forty-five years old on January 17, 2018, the date upon which

he allegedly became disabled, and forty-eight years old as of September

30, 2021, the date he was last insured for benefits under Title II ("DLI").

Plaintiff measures five feet and ten inches in height, and weighed

approximately two hundred and sixty-five pounds during the relevant

period.  Plaintiff resides in a house with his wife in Fulton, New York.

Plaintiff reports that he did not graduate from high school and has not

obtained a GED.  He has worked in the relevant past in various manual

labor positions, including as a commercial printer, warehouse worker, tow

motor driver, and water pasteurizer.  He alleges that he suffered an arm injury while working in the last of these occupations.

Plaintiff alleges that he suffers from pain, weakness, and tremors in his bilateral arms that make it difficult to lift weight, hold objects or use his hands.  He also claims to experience pain in his right knee, bilateral heels and neck, as well as social anxiety and depression .  As is relevant to his application for benefits, he treated for his impairments throughout the relevant period with various sources through Worker's Compensation, orthopedic surgeon Dr. Daniel Murphy at Syracuse Orthopedic Specialists, Dr. Padma Ram and a physician's assistant ("PA") in that office," Emily Crandell, and podiatrist Dr. Nancy Dean-Grosack.

At the administrative hearing related to his application for benefits, plaintiff reported that he is unable to work due to a variety of physical conditions, most notably biceps tendon ruptures in both of his arms and issues with his heels in both feet.  Plaintiff testified that, because of his heel issues, it is difficult for him to stand for more than five or ten minutes at one time.  He also claims to have extensive difficulty using his arms and hands, especially with his left upper extremity because his doctors were unable to repair the tendon in that arm.  Plaintiff, who is left-hand dominant, reported that he experiences difficulty using his left hand because of a related

tremor, including with holding objects or writing.  Although his physicians were able to repair the tendon in his right arm, that arm goes "dead" and numb faster because he tends to overuse it to compensate for his left arm. Plaintiff testified that his wife and son generally do everything around the house, and the fact that he cannot work or help around the house makes him depressed.  He also reported that he experiences anxiety when having to be around people, such that he has to convince himself to go into stores, knowing that he might need to leave because of anxiety or a panic attack.

## II.    PROCEDURAL HISTORY

### A.    Proceedings Before the Agency

Plaintiff applied for DIB payments under Title II of the Social Security Act on February 3, 2020, alleging disability due to torn tendons in his bilateral biceps, a tendon and ligament tear in his right knee, limited neck movement, bilateral heel tendon issues, a damaged left hand, and high social anxiety.  Administrative Law Judge ("ALJ") Jennifer Gale Smith held an administrative hearing to address plaintiff's application for benefits on April 8, 2021, following which she issued a decision on June 3, 2021, finding that plaintiff was not disabled during the relevant times.  That opinion became a final determination of the agency on March 30, 2022, when the Social Security Appeals Council ("Appeals Council") denied

4

plaintiff's request for review of the decision.

      B.    <u>The ALJ's Decision</u>

      In her decision, ALJ Gale Smith applied the familiar, five-step sequential test for determining disability.  At step one, she found that plaintiff did not engage in substantial gainful activity during the relevant period, which spans between his alleged onset date of January 17, 2018, and his DLI of September 30, 2021.  ALJ Gale Smith next found at step two that plaintiff suffers from severe impairments that impose more than minimal limitations on his ability to perform basic work functions, including status post surgical repair of ruptured right biceps tendon, status post ruptured left biceps tendon, decreased sensation in the right lateral antebrachial nerve distribution, cervicalgia, migraine headaches, left hand tremor, bilateral calcaneal spurs, plantar fasciitis, history of syncope, and obesity.  As part of her step two finding, ALJ Gale Smith also found that plaintiff's alleged hyperlipidemia, hypertension, knee pain, sciatica, lumbago, insomnia, abdominal pain, anxiety disorder, and depressive disorder do not constitute severe impairments.

      At step three, ALJ Gale Smith examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that

plaintiff's conditions do not meet or medically equal any of the listed conditions set forth in those regulations, specifically considering Listings 1.15, 1.18, 1.21, 11.14, 11.22, 12.04, and 12.06, as well as Social Security Rulings ("SSRs") 19-4p and 19-2p, related to primary headache disorders and obesity, respectively.

ALJ Gale Smith next surveyed the available record evidence and determined that plaintiff retains the residual functional capacity ("RFC") to perform a range of work at the light exertional level, as defined by the controlling regulations, with the following exceptions:

> the claimant should not work at unprotected heights, climb ladders, ropes, or scaffolds, or work in close proximity to dangerous machinery or moving mechanical parts of equipment. The claimant can occasionally balance, kneel, crouch, crawl, climb ramps and stairs, and stoop. The claimant can frequently reach. The claimant is left hand dominant and can occasionally finger and handle with his right hand and left hand. The claimant can tolerate no more than moderate levels of noise as defined in Appendix D of the Selected Characteristics of Occupations, 1993 Edition. He should avoid work outdoors in bright sunshine and work with bright or flickering lights such as one would experience welding or cutting metals.

ALJ Gale Smith went on to step four and found that plaintiff is unable to perform any of his past relevant work. She then proceeded to step five and, after eliciting testimony from a vocational expert, found that plaintiff

remains able to perform available work in the national economy, citing the representative positions of furniture rental consultant, usher, and chaperone.  Based upon these findings, ALJ Gale Smith determined that plaintiff was not disabled at the relevant times.

### C.    This Action

Plaintiff commenced this action on June 2, 2022.[1]  In support of his challenge to the ALJ's determination, plaintiff argues that the ALJ erred in failing to properly consider all of the evidence in the record, and particularly in failing to properly assess the two opinions from PA Crandell.  Dkt. No. 11.

Oral argument was conducted in this matter, by telephone, on July 11, 2023, at which time decision was reserved.

### III.    DISCUSSION

### A.    Scope of Review

A court's review under 42 U.S.C. § 405(g) and 1383(c)(3) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were

---

[1]    This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in the recently enacted Supplemental Social Security Rules and General Order No. 18.  Under those provisions, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

applied, and whether the decision is supported by substantial evidence. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Where there is reasonable doubt as to whether an ALJ has applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the

administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation

marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal

whether an ALJ's findings are supported by substantial evidence, a

reviewing court considers the whole record, examining evidence from both

sides, because an analysis on the substantiality of the evidence must also

include that which detracts from its weight."  *Williams*, 859 F.2d at 258

(citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951);

*Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

    B.    <u>Disability Determination: The Five-Step Evaluation Process</u>

The Social Security Act ("Act") defines "disability" to include the

"inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months[.]"  42 U.S.C. §

423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The first step requires a determination of whether the claimant is engaged in substantial gainful activity ("SGA"); if so, then the claimant is not disabled, and the inquiry need proceed no further. *Id.* §§ 404.1520(b), 416.920(b). If the claimant has not worked at a level constituting SGA, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).

10

If it is determined that it does, then as a final matter, at step five the agency

must examine whether the claimant can do any other work. *Id.* §§

404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work

lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);

*Ferraris*, 728 F.2d at 584. Once that burden has been satisfied, however, it

becomes incumbent on the agency to prove that the claimant is capable of

performing other available work. *Perez*, 77 F.3d at 46. In deciding whether

that burden has been met, the ALJ should consider the claimant's RFC,

age, education, past work experience, and transferability of skills. *Ferraris*,

728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    Analysis

As was discussed above, plaintiff's claims in this action center upon

his challenge to the ALJ's finding that the opinions regarding plaintiff's

physical and mental functioning provided by treating source PA Crandell

are not persuasive. Administrative Transcript ("AT") at 46-47.[2] Plaintiff

argues that the ALJ's assessment of these opinions was insufficient in that

she (1) failed to adequately explain how she considered the supportability

---

[2]    The administrative transcript is found at Dkt. No. 8, and will be referred to
throughout this decision as "AT __."

factor by relying on a few selective treatment records rather than explaining how the broader evidence supported her conclusion; and (2) inappropriately rejected the opinions because of her conclusion that they seem to be based on his subjective reports rather than observations or other objective evidence.  Dkt. No. 11.

Because plaintiff's application for benefits was filed after March 27, 2017, this case is subject to the amended regulations regarding opinion evidence. Under those regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s), . . . including those from your medical sources," but rather will consider whether those opinions are persuasive by primarily considering whether the opinions are supported by and consistent with the record in the case.  20 C.F.R. § 416.920c(a); *see* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5853 (stating that, in enacting the new regulations, the agency was explicitly "not retaining the treating source rule").  An ALJ must articulate in his or her determination as to how persuasive he or she finds all of the medical opinions and explain how he or she considered the

supportability[3] and consistency[4] of those opinions.  20 C.F.R. §

416.920c(b).  The ALJ also may – but is not required to – explain how he or

she considered the other relevant enumerated factors related to the

source's relationship with the claimant, including the length of any

treatment relationship, the frequency of examinations by the source and the

purpose and extent of the treatment relationship, whether the source had

an examining relationship with the claimant, whether the source specializes

in an area of care, and any other factors that are relevant to the

persuasiveness of that source's opinion.  20 C.F.R. § 416.920c(c).

    As relates to plaintiff's mental functioning, PA Crandell, in a form co-

signed by supervising physician Dr. Ram, reported that plaintiff had

diagnoses of panic disorder and adjustment disorder with symptoms of

decreased energy, difficulty thinking or concentrating, emotional lability,

easy distractibility, sleep disturbance, decreased need for sleep, and

---

[3]    On the matter of supportability, the regulations state that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion or prior administrative medical findings(s) will be." 20 C.F.R. § 416.920c(c)(1).

[4]    On the matter of consistency, the regulations state that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(2).

recurrent severe panic attacks. AT 681. PA Crandell opined that, as a

result of those impairments and symptoms, plaintiff is unable to meet

competitive standards[5] in the areas of dealing with normal work stress,

interacting appropriately with the general public, and maintaining socially

appropriate behavior. AT 682. PA Crandell further opined that plaintiff is

seriously limited but not precluded[6] in his abilities to remember work-like

procedures, maintain attention for two hour segments, maintain regular

attendance and be punctual within customary tolerances, sustain an

ordinary routine without special supervision, work in coordination with or in

proximity to others without being unduly distracted, complete a normal

workday or workweek without interruptions from psychologically based

symptoms, perform at a consistent pace without an unreasonable number

and length of rest periods, accept instructions and respond appropriately to

criticism from supervisors, get along with coworkers or peers without

unduly distracting them or exhibiting behavioral extremes, respond

appropriately to changes in a routine work setting, be aware of normal

hazards and take appropriate precautions, adhere to basic standards of

---

[5]    This qualification is defined within the relevant form as meaning "your patient cannot satisfactorily perform this activity independently, appropriately, effectively, and on a sustained basis in a regular work setting."

[6]    This term is defined as "the ability to function in this area is seriously limited and less than satisfactory, but not precluded in all circumstances."

neatness and cleanliness, travel in unfamiliar places, and use public transportation.  *Id.*  PA Crandell also concluded that plaintiff is limited but satisfactory in his ability to understand, remember, and carry out very short and simple instructions, make simple work-related decisions, and ask simple questions and request assistance.  *Id.*  She further indicated that these limitations were based on plaintiff's panic disorder and agoraphobia, and opined that physical pain increases his depression, that he has repeated episodes of decompensation in work settings, that he would be off-task more than twenty-percent of the workday, and that he would likely be absent from work more than four days per month due to his impairments or treatment.  AT 683.

On the same day, PA Crandell also provided an opinion regarding plaintiff's physical functioning on a form similarly co-signed by Dr. Ram. The sources noted that plaintiff has various diagnoses related to his upper extremities, feet, right knee, and migraine headaches, which cause pain. AT 686.  PA Crandell opined that plaintiff is able to sit for between fifteen minutes and one hour at one time and stand for between five minutes and one hour at one time, and that he is able to sit for less than two hours and

stand or walk for less than two hours in an eight-hour workday.[7]  AT 686-87.  She further opined that, although plaintiff does not require a job that permits shifting positions at will, he does require the use of a cane.  AT 687.  PA Crandell opined that plaintiff can rarely lift even less than ten pounds, rarely twist and stoop/bend, never crouch/squat or climb ladders or stairs, rarely perform various motions with his neck, rarely use his hands, fingers or arms, would require unscheduled breaks every thirty minutes for thirty minutes at a time, would be off-task more than twenty-percent of the workday, and would likely be absent more than four days per month due to his impairments or treatment.  AT 687-88.  Lastly, PA Crandell opined that plaintiff should avoid temperature extremes, wetness, and humidity.  AT 688.

After discussing the content of these opinions in detail, the ALJ concluded that they are not persuasive because "they are inconsistent with [PA Crandell's] own treatment notes and medical examinations of the claimant," and "also inconsistent with the complete record of medical evidence and observations by other medical providers during their

---

[7]    The opinion form is somewhat unclear as to whether the sources were intending to opine that plaintiff can sit for only one hour total and stand for only one hour total by circling two answers in the section of questions regarding how long plaintiff can perform those activities at one time.  AT 686-87.

examinations of the claimant." AT 46-47. The ALJ specifically noted that evidence from plaintiff's podiatrist and consultative examiner Dr. Elke Lorensen in particular refutes the claim that plaintiff requires the use of a cane. AT 47. As to the opinion regarding mental functioning, the ALJ highlighted one illustrative normal mental status examination from a February 2021 treatment record, noting that "the description of the claimant's mental status exam for this office visit is similar or even more thorough in detail than PA Crandell has reported for prior office visits." AT 47. The ALJ further noted that, although PA Crandell is an acceptable medical source, she does not have a specialty in psychiatric or behavioral health treatment, and that, given the lack of support from the objective clinical findings, it is "more likely her opinions are based upon the narrative of what the claimant has told her he is able to [do]." *Id.*

Plaintiff essentially argues that the ALJ failed to point to substantial evidence to support her finding that these opinions are not persuasive because she relied on one or two specific pieces of evidence, while ignoring other evidence. However, the fact that the ALJ did not cite or discuss every piece of evidence supporting her conclusion within the section where she discussed PA Crandell's opinions does not serve as proof that she failed to consider the other evidence in the record. Indeed,

prior to addressing the opinion evidence in her decision, the ALJ recounted in some detail both plaintiff's subjective reports and the medical evidence related to his various physical and mental impairments. AT 32-41. On the whole, that discussion of the evidence reveals objective and other findings that generally support the ALJ's conclusions regarding the persuasive nature of PA Crandell's opinions, as they appear to consist of an accurate representation of the type of symptoms and treatment that plaintiff received throughout the relevant period, and I do not discern any indication that the ALJ failed to appropriately consider evidence showing significantly greater limitations. Plaintiff points to some specific pieces of evidence in his brief that he believes are contrary to the ALJ's finding, yet those arguments amount to little more than a request to reweigh the evidence in a manner more favorable to plaintiff. Reweighing the evidence, however, is not the function of this court and, absent any indication that the ALJ truly ignored relevant evidence or interpreted the evidence in a manner so unreasonable that no other factfinder could have reached the same conclusion, the ALJ's findings must be upheld to the extent they are supported by substantial evidence. *See Shyla D. v. Kijakazi*, 20-CV-1295, 2022 WL 798158, at *3 (N.D.N.Y. Mar. 16, 2022) (Stewart, M.J.) (collecting cases).

In the same vein, I do not find that the ALJ failed to appropriately

consider the required factors of consistency and supportability in evaluating PA Crandell's opinions.  As was discussed, the ALJ found those opinions to be both inconsistent with PA Crandell's own treatment notes and the other evidence in the record, and her discussion of that evidence provides the necessary elaboration for that otherwise conclusory finding.

I note that, as to the opinion of physical functioning, plaintiff argues that "the ALJ failed to articulate consideration of the opinion of [podiatrist Dr.] David Arnett, [ ] in the context of analyzing the supportability of PA Crandall's [sic] opinion." Dkt. No. 11, at 14.  However, there is no reason why the ALJ would have considered Dr. Arnett's opinion, given that it is dated the day after the ALJ rendered her decision, and accordingly could not have been before the ALJ at the time of her decision.  AT 20.  Further, the ALJ granted the plaintiff a considerable amount of time – thirty days – following the hearing in which to submit additional evidence, and did not render her decision until approximately a month following the expiration of that thirty-day period.  AT 121-23.  Because Dr. Arnett's opinion was not submitted before the ALJ rendered her decision, she cannot be faulted for failing to consider whether that opinion supports PA Crandell's opinions.

Nor do I find that Dr. Arnett's opinion should be entitled to any great consideration in this appeal.  The Appeals Council, to whom that opinion

was submitted in the first instance, considered that opinion but found that it did not relate to the period at issue in the ALJ's decision because it was dated after the date of the ALJ's decision.  AT 2.  Plaintiff has not challenged anything about the Appeals Council's finding in this proceeding.  Consequently, whether or not Dr. Arnett's opinion is consistent with the physical functioning opinion from PA Crandell is beyond the scope of plaintiff's challenge to the Commissioner's determination.

I note, moreover, that the other opinions that were in the record before the ALJ are uniformly inconsistent with the level of limitation opined by PA Crandell.  Opinions from various independent medical examination sources throughout 2018 related to plaintiff's worker's compensation claim for his biceps tendon ruptures consistently indicated that plaintiff was capable of lifting ten to fifteen pounds, with one such source opining he could lift up to twenty-five pounds.  AT 419, 430, 455, 459.  In addition, a functional capacity evaluation conducted in December 2018 concluded that plaintiff displayed an ability to safely lift a maximum of thirty pounds, and that source opined he could perform lifting consistent with light work.  AT 512-13.  By February 2019, an independent medical examiner agreed that plaintiff could perform the level of work expressed in the functional capacity evaluation for a full eight-hour day.  AT 481.  In July 2020, Dr. Lorensen

opined that plaintiff had only mild restrictions to prolonged standing and

ambulating, with moderate limitations in bending, lifting, carrying, and

handling small objects, all of which is consistent with the RFC finding.  AT

570.  Further, in October 2020, plaintiff's podiatrist, Dr. Dean-Grosack,

opined that, since at least March 10, 2020, plaintiff had the ability to sit at

least six hours and stand or walk at least six hours in an eight-hour

workday, did not require the ability to change positions at will, and did not

require a cane, although she did not render any opinion regarding his ability

to lift and carry or perform postural activities.  AT 676.  Two state agency

medical consultants also opined to plaintiff's ability to perform a range of

light work based on their review of the evidence.  AT 134-36, 150-54.  In

addition to this opinion evidence, plaintiff also appears to have reported in

an intake sheet for treatment that he was able to sit for four-to-six hours,

stand for two-to-three hours, walk for one hour and lift, push, and pull thirty

pounds.  AT 461.  While not necessarily fully consistent with light work,

plaintiff's own reports on this occasion also suggest that he was more

capable during the relevant period than he has otherwise reported.  The

opinion evidence in this case therefore fairly consistently appears to

contradict the limitations opined by PA Crandell, and the ALJ discussed the

extent to which she relied on those various opinions and other relevant

evidence.

Further, as to the opinion of mental functioning, I note that the ALJ found that plaintiff's anxiety and depression do not constitute severe impairments, a finding which plaintiff has not directly challenged.  AT 28-30. At step two, when applying the required psychiatric review technique to assess the extent of the severity of plaintiff's mental impairments, the ALJ concluded that plaintiff has no more than mild limitations in any of the relevant areas of functioning, engaging in a fairly significant assessment of the relevant evidence, including the opinion evidence.  *Id.*  Further, when determining that PA Crandell's opinion specifically is not persuasive, the ALJ appropriately pointed to the fact that PA Crandell's own mental status examinations did not reveal significant abnormalities.  Again, the fact that the ALJ did not discuss or cite to every treatment note in support of that conclusion does not render her finding unsupported.  *Brault*, 683 F.3d at 448.  Plaintiff notably has not pointed to any medical evidence, in either PA Crandell's treatment notes or the treatment notes of other sources, that suggests the ALJ's conclusion as to his mental limitations is erroneous. The only mental evidence plaintiff highlights to support his argument is from the examination of consultative examiner Dr. Jeanne Shapiro, who noted a depressed mood, and some impairment likely due to a potential intellectual

or cognitive deficit.  AT 577.  Yet, plaintiff is not alleging disability due to a

cognitive impairment.  As to his anxiety and depression, the ALJ is correct

that the treatment notes related to those impairments, sparse as they are,

indicate that plaintiff's mental impairments were greatly improved when he

complied with taking his prescribed medication at the appropriate dose.

*See e.g.,* AT 562 (treatment note from April 2019 in which plaintiff reports

anxiety and depression have been mostly controlled since his last visit),

611 (treatment note from September 2020 in which plaintiff reports mental

symptoms, noting he has not been taking any mental health medications),

723 (treatment note from February 2021 in which plaintiff reports he has no

concerns about mental health symptoms since being placed on an

increased dose of Wellbutrin).  Because there is no evidence other than the

plaintiff's subjective reports of panic attacks and anxiety – which the ALJ

found to be not completely consistent with the other evidence in the record

– to support the existence of work-related mental limitations, I find the

ALJ's rejection of PA Crandell's mental functioning opinion to be supported

by substantial evidence.

To the extent that plaintiff objects to the ALJ's observation that PA

Crandell's opinion is not persuasive because it appears to be based on

plaintiff's subjective reports, I note that finding was not made in isolation,

but instead in conjunction with the finding that the opinion is inconsistent with the objective clinical findings.  AT 47.  It is unclear how much weight the ALJ placed on the perceived fact that the opinion was based on plaintiff's own narrative of his symptoms, but, in light of the ALJ's clear reliance on the fact that the opinion is unsupported by PA Crandell's own treatment records and inconsistent with the other medical evidence in the record, I am not convinced that the ALJ's highlighting her belief that the opinion was likely based on plaintiff's subjective reports had a material impact on whether her overall findings are supported by substantial evidence in this case.

For all of the above reasons, I find that the ALJ appropriately applied the relevant regulation in this matter and her assessment of PA Crandell's opinion is supported by substantial evidence.[8]

---

[8]    Following the recent hearing, plaintiff, upon leave, filed a notice of supplemental authority, citing to this court's recent decision in *Murphy v. Comm'r of Soc. Sec.*, 5:22-CV-0243 (Sannes, C.J.).  Plaintiff argues that this case is relevant to the issues currently being considered in this action, in that Chief District Judge Brenda K. Sannes found that *Loucks v. Kijakazi*, 21-CV-1749, 2022 WL 2189293 (2d Cir. 2022), "does not suggest that a substantial evidence review can cure a procedural error" in the context of an ALJ's failure to assess the factors of consistency and supportability.  Neither this case nor plaintiff's arguments alter my conclusions.  Plaintiff's reliance on a single statement from *Murphy* ignores the rest of that decision.  Notably, in her decision, Judge Sannes acknowledged that, although failure to explicitly articulate consideration of the factors of consistency and supportability is a procedural error, such error does not automatically require remand, but rather the ALJ's findings may be upheld if a searching review of the record assures the court that the substance of the regulations were not traversed, such as where "the ALJ's consideration of the relevant factors can be gleaned from the ALJ's decision as a whole."  *Murphy*, 5:22-CV-0243, Dkt. No. 16, at 5.

IV.    <u>SUMMARY AND RECOMMENDATION</u>

After considering the record as a whole and the issues raised by the plaintiff in support of his challenge to the Commissioner's determination, I recommend a finding that the determination resulted from the application of proper legal principles and is supported by substantial evidence. Accordingly, it is hereby respectfully

RECOMMENDED that the Commissioner's decision be AFFIRMED, defendant's motion for judgment on the pleadings (Dkt. No. 11) be GRANTED, plaintiff's motion for judgment on the pleadings (Dkt. No. 9) be DENIED, and plaintiff's complaint be DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days

---

Chief Judge Sannes explained that there is a difference between assessing an ALJ's decision to ascertain whether the ALJ's consideration of the relevant factors can be gleaned from that decision, and assessing whether a decision is supported by substantial evidence despite the existence of a procedural error, and concluded that only the first of these is endorsed by *Loucks*. *Id.* at 7. Chief Judge Sannes concluded that the rationale regarding the ALJ's consideration of the relevant factors could not in fact be gleaned from the ALJ's decision in *Murphy*, and that remand was therefore required, regardless of whether substantial evidence could nonetheless be said to support the ALJ's ultimate conclusion as to the relevant opinion. *Id.* at 7. The decision in *Murphy* therefore does not alter in any way the prevailing law that a procedural error in explicitly articulating the relevant factors when assessing an opinion may be found harmless if the ALJ's consideration of those factors can nonetheless be gleaned from the decision as a whole. In this case, there was no need to glean the ALJ's assessment of the relevant factors as to PA Crandell's opinions because the ALJ *explicitly* stated that she found the opinions to be inconsistent with her own treatment notes and inconsistent with the other medical evidence in the record, citing to some specific examples regarding certain opined limitations along with that finding; the ALJ's discussion of the evidence in the rest of her decision merely elaborates on the support underlying those findings. AT 46-47.

within which to file written objections to the foregoing report.  Such

objections shall be filed with the Clerk of the Court.  <u>FAILURE TO OBJECT</u>

<u>TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE</u>

<u>APPELLATE REVIEW</u>. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993)

(citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir.

1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:   July 25, 2023
         Syracuse, NY

_____
DAVID E. PEEBLES
U.S. Magistrate Judge